**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:09 AM August 23, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| HOWARD K. HARGIS AND | ) | CASE NO. 09-64398 |
| CATHY Y. MARTIN, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | |
| | ) | **AMENDED[1] MEMORANDUM OF** |
| | ) | **OPINION (NOT FOR PUBLICATION)** |
| | ) | |

      The dispute before the court involves Debtor Cathy Y. Martin's[2] attempt to reduce plan payments through a modification filed on February 11, 2013. She contends that recent life insurance proceeds and the transfer of her late husband's 401(k) are not sources of disposable income. Toby L. Rosen, the chapter 13 trustee ("Trustee") opposes the reduction, arguing the alternate position. The trustee also challenges the modification on good faith grounds. The court held a hearing on May 8, 2013, at which time it issued a scheduling order. Each party submitted a legal memorandum in support of its position.

      The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated

---

1 The amendment is made to correct inaccurate code citations.
2 A notice of suggestion of death was filed for Debtor Howard Hargis on January 15, 2013 indicating he died on December 15, 2012. "Debtor" will refer to Cathy Y. Martin.

1

April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and/or (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtors filed a joint chapter 13 petition on October 22, 2009. At the time of filing, they owned real estate subject to a mortgage, which they surrendered in the bankruptcy. Debtors rented a home for $1,500.00 per month. Other secured debt included payment on two vehicles, a 2005 Ford F-150 and a 2008 Nissan Pathfinder, to be paid through their chapter 13 plan. They also scheduled approximately $8,000.00 to the Internal Revenue Service ("IRS").[3] Schedule F contained unsecured debt in excess of $120,000.00.

Debtor Cathy Martin has not been employed outside the home for fifteen years. Mr. Hargis worked for Republic Engineering Products, plus received a pension. Per Schedule I, Debtors netted $7,246.00 per month. As a result, Debtors were above-median debtors, subject to a sixty month plan commitment. Their only dependent, who was fourteen when the case was filed, graduated from high school this year.

The court confirmed an amended chapter 13 plan on February 10, 2010. Under that plan, Debtors were paying $3,000.00 per month to Trustee for distribution to creditors. The plan proposed an eighty percent repayment to unsecured creditors.

The plan was modified following confirmation. On May 12, 2010, Debtors and Trustee agreed to reduce payments to $2,810.00. An unopposed modification filed on June 30, 2010 dealt with the unsecured deficiency balance on the surrendered real estate. Another unopposed amended modification, dated May 3, 2011, sought to reduce payment to $1,100.00 for two months to allow Debtors to pay their 2010 income tax liability.

The suggestion of death states that Mr. Hargis died on December 15, 2012. Since his death, Mrs. Martin received proceeds from two life insurance policies, totaling just over $380,000.00. She also received approximately $78,000.00 from her late husband's 401(k), for a grand total of more than $450,000.00 received by Debtor following her husband's death. Neither the policies nor the 401(k) was disclosed on Schedule B and no exemptions were claimed.

On January 15, 2013, Debtor filed a modification to reduce plan payments to $605.00 for three months while she sought employment and administered her husband's estate. This modification was not opposed. It was followed by a modification, dated February 11, 2013, that proposed to reduce payments to $655.00 for the remaining term of the plan. This payment will pay the IRS claim and provide no further distribution to unsecured creditors. Trustee objected on

---

3 The filed claim was much higher. Several amended claims have been filed, the latest on July 2, 2013 for $26,430.56. An objection to that claim is pending.

February 21, 2013.

Yet another amended modification was filed on April 11, 2013. In this one, Debtor proposes to surrender the 2005 Ford F-150, the vehicle used primarily by Mr. Hargis.

The current amended Schedules I and J show that Debtor has no income and $2,546.52 in monthly household expenses.

Debtors paid approximately $115,000.00 into the plan. Unsecured creditors have received a distribution exceeding fifty percent of allowed claims. Trustee's calculations show that $53,726.00 is needed to pay the plan in full and provide a one hundred percent dividend to creditors. Debtor's proposed reduction would pay the IRS claim with no further distributions to other claimants.

After her husband died, the landlord where the family was living listed their rental home for sale. Debtor arranged alternate living arrangements for she and her daughter through a $203,000.00 cash purchase of a condominium. She took possession in April 2013. The monthly condominium fees are $178.00 and real estate taxes are $261.12. She also purchased a 2011 Subaru Legacy for just under $21,000.00.

Debtor unsuccessfully sought employment. She decided to return to college and will be a student at North Central State College this fall.

## DISCUSSION

### I. Disposable income

The first issue before the court is whether the postpetition life insurance proceeds and 401(k) monies that Debtor received as a result of her husband's death are disposable income? Trustee argues the funds are disposable income and Debtor disagrees. Section 1325(b)(2) contains the definition for disposable income. Trustee contends, without citation, that § 1325(b) is applicable to modifications. The court is not as easily persuaded.

Modification of a confirmed plan is governed by § 1329. Under § 1329(a)(1), a plan may be modified to reduce payments to the unsecured creditors, as Debtor seeks here. Continuing further, § 1329(b)(1) outlines several provisions that are applicable to modifications. Included is section 1325(a), which sets forth prerequisites to confirmation. Section 1325(b)(2), covering disposable income, is not included on the list. This omission makes a material difference to the courts that conclude "disposable income" is not a consideration in approving a modification. *See, e.g.,* Forbes v. Forbes (In re Forbes), 215 B.R. 183, 191 (B.A.P. 8th Cir. 1997).

Forbes recognized a converse view which whereby § 1325(b)(2) is applicable through § 1325(a)'s reference to subsection (b): "[e]xcept as provided in subsection (b), the court shall confirm a plan . . ." if the outlined confirmation requirements are met. Id. at 191; 11 U.S.C.

3

§ 1325(a). As stated above, subsection (b) of 1325 relates to disposable income. Under this perspective, through section 1325(a)'s incorporation of § 1325(b), § 1325(b) would therefore apply to modifications. *See also* In re Baker, 194 B.R. 881, 884 (Bankr. S.D. Cal. 1996). Forbes rejected this view, noting that "Congress omitted Code Section 1325(b) in the requirements for postconfirmation plan and modification … and [we] decline to take its prerogative as our own." Id. at 191. The Forbes conclusion was also premised on Judge Lundin's comments on the problem created by application of § 1325(b) to modifications:

> Application of the disposable income test at confirmation of a modified plan is at least confusing and may render many postconfirmation modifications impossible altogether.... [C]ounting the three-year period in the disposable income test from the date the first payment is due under the modified plan would preclude approval of modification of a plan that is already more than two years old. Section 1329(c) clearly states that the court may not approve a modified plan that calls for payments after five years after the first payment was due under the original confirmed plan.... Mathematically, no proposed modified plan can satisfy both the disposable income test in § 1325(b) and the five-year limitation in § 1329(c) if the proposed modification is filed after two years after the commencement of payments under the original plan.

Id. at 192 (citing Lundin, Keith M., Chapter 13 Bankruptcy, vol. 2 § 6.45 at 6-136 to 137).

Under the BAPCPA definition of disposable income, the problem recognized in Forbes is exacerbated. Disposable income is defined as follows:

> the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . to a qualified religious or charitable entity or organization . . . .

4

09-64398-rk    Doc 115    FILED 08/23/13    ENTERED 08/26/13 08:55:51    Page 4 of 9

11 U.S.C. § 1325(b)(2). "Current monthly income" is, in turn, defined at 11 U.S.C. § 101(10A)(A):

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>
>   (i) the last date of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>
>   (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by an entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

Looking at the plain language of the statute, "current monthly income" is historical by definition. Since disposable income is predicated on this definition, it is also historical. Under the strict definition, because of the historical view, disposable income could not encompass any postpetition changes. It would be absurd to apply § 1325(b) only to have it rendered meaningless. For this reason, and those outlined by Forbes and Judge Lundin, the court finds that Trustee is incorrect and concludes that section 1325(b) is not applicable to modifications.

The question then becomes how to encompass postpetition increases in earnings or other postpetition monetary increases. Pre-BAPCPA, the definition of disposable income was merely the amount of income that was not necessary for support. *See, e.g.,* Freeman v. Schulman (In re Freeman), 86 F.3d 478 (6th Cir. 1996). The definition did not contain any reference to a six-month look back period as a basis for calculating disposable income. As a result, cases decided before BAPCPA are of little utility. However, in the past, postpetition increases in income were captured for the benefit of creditors. The court finds that its decision rejecting

5

§ 1325(b) doesn't work a significant change because § 1322(a)(1) requires a debtor to contribute future earnings or income "as is necessary for the execution of the plan."

Section 1329(b) makes § 1322(a)(1) applicable to modifications. A modification must "provide for the submission of all or such portion of future earnings or other future income to the supervision and control of the trustee as is necessary for the execution of the plan." No one can dispute that the life insurance proceeds and 401(k) monies will provide a source of income to Debtor. She doesn't work and her husband was the sole breadwinner in the family. Under § 1322(a)(1), Debtor will have to pay over whatever portion is necessary to meet the terms of the plan or modification.

Additionally, the funds are property of the estate. Property of the estate is defined by 11 U.S.C. § 1306 and includes after-acquired property and post-petition earnings. Under § 1306(a), the life insurance proceeds and the 401(k) funds are property of the estate. *See also* In re Carroll, 2012 WL 5960077 (Bankr. E.D.N.C. 2012) (including a survey of courts reaching the same conclusion). The bankruptcy code provides a general rule that "the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). However, in this court, the confirmation order contains a contrary provision for after-acquired property that specifically excepts it from vesting in the debtor. (Order Confirming Plan ¶ 4, ECF No. 40) Under this plan provision, after-acquired property and post-petition earnings remain property of the bankruptcy estate. *See also* Waldron v. Brown (In re Waldron), 536 F.3d 1239 (11th Cir. 2008); In re Wiggins, 2012 WL 3889099 (Bankr. E.D. Tenn. 2012). It follows that since the life insurance proceeds and 401(k) monies did not vest in Debtor, they are property of the bankruptcy estate. Debtor has not claimed any exemptions in the assets.

**II.    Good faith**

Trustee argues that Debtor's modification was not proposed in good faith. She takes issue with Debtor's cash purchase of a $200,000+ condominium and another vehicle, as well as her lack of employment and failure to adjust her expenses.[4] Trustee argues that the proceeds provided ample income for Debtor to continue payments under the confirmed plan until plan completion.

A plan modification must be filed in good faith. 11 U.S.C. § 1329(b)(1); 11 U.S.C. § 1325(a)(3). Good faith is determined by looking at the totality of the circumstances. Society Nat'l Bank v. Barrett (In re Barrett), 964 F.2d 588 (6th Cir. 1992) (citations omitted). There is no single test for good faith. Metro Emp. Credit Un. v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030 (6th Cir. 1998). Trustee cites twelve factors from In re Caldwell used to decide whether the plan was filed in good faith:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
>
> (2) the debtor's employment history, ability to earn and

---
[4] Debtor has since submitted an amended Schedule J itemizing $2,547.00 in monthly expenses.

09-64398-rk    Doc 115    FILED 08/23/13    ENTERED 08/26/13 08:55:51    Page 6 of 9

likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

895 F.2d 1123, 1126-27 (6th Cir. 1998) (citations omitted). While these considerations may be helpful, they do not fit neatly into a plan modification review.

Many courts have imposed a requirement that a modification must be supported by a substantial and unanticipated change in circumstances. Although the Sixth Circuit has not ruled whether this is indispensable for a plan modification, the Bankruptcy Appellate Panel found no such requirement in the bankruptcy code. Ledford v. Brown (In re Brown), 219 B.R. 191 (B.A.P. 6th Cir. 1998). Regardless, this court finds that it does speak loudly to a debtor's good faith in seeking a modification. Here, the court finds that the death of the co-debtor, the sole income provider in the household, was a substantial and unanticipated post-confirmation change to support Debtor's quest for a modification and speaks to her good faith.

7

Many of the other facts also speak in Debtor's favor. Debtor was not employed and had not worked outside the home in fifteen years. When her husband died, she had a teen-age daughter and no income. Clearly, she viewed the life insurance proceeds and the 401(k) monies as replacement income to support she and her daughter.

Debtor and her husband were approximately thirty-seven months into their sixty month plan when Debtor's husband died. They had paid over fifty-percent of the unsecured claims and were on track to make a one hundred percent distribution to unsecured creditors, more than the eighty percent called for under the plan.

Prior to her husband's death, the parties were renting a home for $1,500.00 per month. When her husband died, the landlord listed that property for sale and it sold quickly. Debtor's purchase of the condominium resulted in a much smaller outlay of funds on a monthly basis. Rather than spending $1,500.00 in rent, she now pays approximately $438.00 per month in condominium fees and real estate taxes, for savings of over $1,000.00 per month.

Where Debtor fails to establish good faith is in her depletion of property of the estate. As Trustee points out, she spent over one-half of the funds she received and now seeks to protect a large portion of the remaining funds. She proposes to pay in the neighborhood of $15,000.00 to creditors for the balance of the plan. This represents about three percent of the total amount received. Her goals appear entirely self-serving: she proposes to pay only what is necessary to clear the priority debt, which would survive discharge if unpaid. She has offered no explanation for the cash purchase of another vehicle when she had a vehicle that was paid through the plan. And she has offered no explanation for the need for two vehicles following her husband's death.

Under Debtor's proposal, she will retain $2,547.00 per month to cover her expenses, plus contribute $655.00 per month to the plan, for a total of roughly $3,200.00 per month. The $655.00 per month "plan contribution" is more than slightly illusory since it will only pay nondischargeable debt. This is a payment based solely in self-interest. Over the course of remaining plan term, the total outlay represents about $74,000.00. On these figures, at the end of the plan, she will have a discharge, a condominium worth in the neighborhood of $200,000.00, two vehicles, and approximately $150,000.00 in liquid assets. Her net worth could be in the vicinity of $350,000.00. This seems a bit too much considering her creditors stand to lose thirty percent of the eighty percent they were scheduled to receive under the confirmed plan. A determination of good faith is always fact specific, hence the abundance of multi-part tests. On these facts, it boils down to the conclusion that it is unfair to permit someone who has suddenly received so much to keep all of it when so much is still owed.

The court cannot say where the line should be drawn. It can only decide the question presented. The court concludes that the modification is not filed in good faith.

## **CONCLUSION**

Following the postpetition death of her husband, Debtor received $450,000 in life

8

insurance proceeds and 401(k) funds. While these assets cannot be used to derive disposable income under § 1325(b), under § 1322(b)(1), a debtor is required to submit income in an amount that is sufficient to satisfy the terms of a plan. The funds do constitute property of the estate, for which no exemption was claimed.

Debtor has not acted in good faith in proposing the modification. Her actions through the death of her husband show good faith. However, since his death, Debtor's use of property of the estate, and her desire to retain as much of it as possible, lack good faith.

Trustee's objection to Debtor's modification will be sustained by a separate order to be entered contemporaneously with this opinion.

#   #   #

**Service List:**

R Joshua Brown
32 Lutz Ave
Lexington, OH 44904

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702